# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mary D.,                                          Civ. No. 21-1995 (BRT)

          Plaintiff,

v.                                               **MEMORANDUM**
                                                 **OPINION AND ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

          Defendant.

Jyotsna Asha Sharma, Esq., Disability Partners, PLLC, counsel for Plaintiff.

Marisa Silverman, Esq., Social Security Administration, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mary D. seeks judicial review of the final

decision of the Commissioner of Social Security ("the Commissioner") denying her

application for supplemental security income ("SSI") and disability insurance benefits.

This matter is before the Court on the parties' cross-motions for summary judgment, in

accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 20, 22.) For the reasons set forth

below, Plaintiff's motion for summary judgment is granted in part and denied in part,

Defendant's motion for summary judgment is denied, and the matter is remanded to the

Commissioner for further proceedings consistent with this Order.

## BACKGROUND

### I.    Procedural History

On July 26, 2018, Plaintiff applied for disability insurance and SSI benefits under Title II and XVI of the Social Security Act, alleging she became unable to work because of her disability on January 1, 2018. (Tr. 235–43.) The Social Security Administration ("SSA") denied Plaintiff's application and again on reconsideration. (Tr. 144–48, 151–58.) Plaintiff requested a hearing, and a hearing before an Administrative Law Judge ("ALJ") was held on April 17, 2020. (Tr. 37–64.) In a decision dated April 29, 2020, the ALJ proceeded through the sequential five-step evaluation process and determined that Plaintiff was not disabled since her alleged disability onset date. (Tr. 14–30.) The Appeals Council denied Plaintiff's request for review on July 6, 2021, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981; (Tr. 1–4).

### II.    Relevant Evidence

The Court adopts and incorporates the facts of record, (Doc. No. 15), and will include the relevant facts as necessary in the discussion of each issue.

## DISCUSSION

### I.    Standard of Review

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that she is not only unable to do her previous work

2

but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The claimant bears the burden of proving disability. *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant demonstrates that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "[T]he substantiality of the evidence must take into account whatever fairly detracts from its weight, and the notable distinction between 'substantial evidence' and 'substantial evidence on the record as a whole,' must be observed." *Bauer v. Soc. Sec. Admin.*, 734 F. Supp. 2d 773, 799 (D. Minn. 2010) (citations omitted). This test requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). If, after review, the record as a whole supports the Commissioner's findings, the

Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## II.   Analysis

Plaintiff argues the ALJ erred in several ways to account for her severe impairment—migraine headaches—when formulating her residual functional capacity ("RFC"). (*See generally* Doc. No. 21, Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem.").) In response, the Commissioner argues that substantial evidence supports the ALJ's findings and that the ALJ properly evaluated the medical opinions in the record. (*See generally* Doc. No. 23, Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.").)

### A.  The ALJ's decision

The SSA has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4) (explaining the five-step sequential evaluation process); 20 C.F.R. § 404.1520(a)(4). Steps one through three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); 20 C.F.R. §§ 416.920(a)-(d), 404.1522. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Pate-Fires*, 564 F.3d at 942; *see also* 20 C.F.R. § 416.920(e). Before step four, the ALJ assesses the claimant's RFC, "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); *see also* 20 C.F.R. §§ 416.920(e), 404.1545, 416.945(a) ("Your

residual functional capacity is the most you can still do despite your limitations."). At step four, the ALJ must determine whether the claimant can return to his past relevant work. 20 C.F.R. § 416.920(f). If the ALJ finds at step four that a claimant cannot return to past relevant work, the burden shifts to the SSA at step five to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* §§ 416.920(g), 912, 960(c).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since January 1, 2018, the alleged disability onset date. (Tr. 16.) At step two, the ALJ found that Plaintiff's migraine headaches were a severe impairment. (Tr. 17–18.) At step three, the ALJ determined that Plaintiff's migraine headaches, while severe, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18–20.) Before continuing to step four, the ALJ formulated Plaintiff's RFC and found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations:

> lifting and carrying 10 pounds occasionally and less than 10 pounds frequently; sitting for 6 hours and standing and/or walking for 2 hours out of an 8-hour workday; pushing and pulling as much as can lift and carry; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching and crawling; unimpaired vision in the right eye; blindness in the left eye with prosthesis; no work with physical requirement . . . for depth perception; no driving or exposure to moving mechanical parts; no work at unprotected height or near moving mechanical parts; no operation of a motor vehicle; no exposure to extremes of wetness; no exposure to extremes of cold; no use of hand power tools or similar direct, and sustained physical contact with heavy vibrating machinery; option to use cane when walking for more than

5

5 minutes.

(Tr. 20–28.) After formulating Plaintiff's RFC, the ALJ found at step four that Plaintiff was unable to perform any past relevant work. At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 29–30.) As a result, the ALJ found that Plaintiff had not been under a disability. (Tr. 30.)

### B. Whether Plaintiff's migraine headaches equaled Listing 11.02

Plaintiff argues that the ALJ failed at step three to evaluate whether Plaintiff's migraine headaches equaled Listing 11.02, "Epilepsy," which according to Plaintiff is the most closely analogous listing to Plaintiff's migraine disorder. (Pl.'s Mem. 21–24.) Listing 11.02 contains four different circumstances in which the listing may be met, two of which are relevant here: paragraphs B and D. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.02 (2017). Equaling either of these paragraphs' criteria leads to a determination of disability. *Hall v. Saul*, No. 18-CV-2032 (LTS/KEM), 2019 WL 5085427, at *5 (N.D. Iowa Oct. 10, 2019). Plaintiff's argument focuses on the criteria under paragraph B, which Plaintiff argues she met but that the ALJ failed to consider. Pursuant to paragraph B, Listing 11.02 "may be met if severe migraines occur at least one a week for at least 3 consecutive months despite adherence to prescribed treatment." *Id.* (citations and quotations omitted.) In addition, Social Security Ruling 19-4p provides guidance on how to evaluate primary headache disorders such as migraines in disability claims. *See Melissa Kathleen B. v. Kijakazi*, No. 20-CV-2115 (ECT/HB), 2022 WL

447232, at *6 (D. Minn. Jan. 27, 2022) (citing Social Security Ruling 19-4p, 2019 WL

4169635, *8, n.27 (Aug. 26, 2019) and 20 C.F.R. § 402.35(b)(1)).

Here, citing Social Security Ruling 19-4p, the ALJ noted that an ALJ should

consider the following when evaluating primary headache disorders such as migraines:

> A detailed description from an acceptable medical source of a typical event,
> including all associated phenomena (for example, premonitory symptoms,
> aura, duration, intensity, and accompanying symptoms); the frequency of
> headache events; adherence to prescribed treatment; side effects of treatment
> (for example, many medications used for treating a primary headache
> disorder can produce drowsiness, confusion, or inattention); and limitations
> in functioning may be associated with the primary headache disorder or
> effects of its treatment, such as interference with activity during the day (for
> example, the need for a darkened and quiet room, having to lie down
> without moving, a sleep disturbance that affects daytime activities, or other
> related needs and limitations).

(Tr. 19.) After citing this guidance, the ALJ cited the criteria listed under both paragraphs

B and D of Listing 11.02. But the ALJ's analysis failed to *apply* the criteria of paragraph

B to Plaintiff's migraines. Instead, without discussing the criteria listed under paragraph

B, the ALJ jumped to an analysis of paragraph D, focusing on that paragraph's

requirement of "marked limitations."[1] Thus, the ALJ did not correctly consider whether

Plaintiff met Listing 11.02 under paragraph B's criteria.

---

[1]     The Court recognizes that "an ALJ's failure to address a specific listing or to
elaborate on his conclusion that a claimant's impairments do not meet the listings is not
reversible error if the record supports the conclusion." *Vance v. Berryhill*, 860 F.3d 1114,
1118 (8th Cir. 2017). On remand, however, the ALJ must reassess whether the record
supports the criteria of paragraph B.

**C.  Whether the ALJ erred in formulating Plaintiff's RFC**

A claimant's RFC represents the most she can do despite the combined effects of all of her limitations, severe and non-severe. 20 C.F.R. § 416.945(a), (e). The RFC assessment is "based on all the relevant medical and other evidence" in the record and the claimant bears the burden of establishing her RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir 2004). Here, Plaintiff argues the ALJ failed to include findings regarding her absenteeism as part of her RFC. Specifically, Plaintiff argues that the ALJ (1) incorrectly found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence; (2) improperly rejected her primary care provider Kristie Johnson's, PA-C, opinions regarding Plaintiff's absenteeism; and (3) erred by failing to include any off-task provision in the RFC and by requiring Plaintiff to prove her migraines' severity through objective clinical findings.

**1.  The ALJ's analysis of Plaintiff's subjective complaints**

Plaintiff claims that the ALJ erred in finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. The Eighth Circuit's decision in *Polaski v. Hecker* identifies factors that the ALJ must consider in evaluating a claimant's subjective complaints.[2] *See Polaski v. Hecker*, 739 F.2d 1320,

---

[2]    These factors are codified at both 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. § 416.929(c)(3). The factors include (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of

1322 (8th Cir. 1984). In addition to objective medical evidence, the ALJ must also

consider the following:

> the claimant's prior work record, and observations made by third parties
> and treating and examining physicians relating to such matters as: 1. the
> claimant's daily activities; 2. the duration, frequency and intensity of the
> pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and
> side effects of medication; [and] 5. functional restrictions.

*Id.* The ALJ is not required to discuss each factor individually or in depth. *See Dunahoo*

*v. Apfel*, 214 F.3d 1033, 1038 (8th Cir. 2001).

Here, the ALJ acknowledged Plaintiff's reports of a disabling level and frequency

of migraine headaches, but implied that these reports were "not entirely consistent with

the medical evidence in the record." (Tr. 21.) With respect to her migraines, the ALJ

relied on an "unremarkable" 2017 MRI. (Tr. 22.) But the ALJ's reference to the

"unremarkable" MRI does not support any finding of an inconsistency with Plaintiff's

reports of debilitating migraine headaches. Instead, this indicates a misunderstanding of

the assessment of migraine headaches. *See generally*,

https://www.mayoclinic.org/diseases-conditions/migraine-headache/diagnosis-

treatment/drc-20360207. Neither the occurrence nor the severity of migraine headaches is

specifically detectable through such testing. *Id.* MRIs are used, not to positively diagnose

migraines, but to determine other cause(s) of the patient's affliction. *Id*; *see also Williams*

*v. Kijakazi*, No. 4:20-CV-1493 (DDN), 2022 WL 823062, at *11 (E.D. Mo. Mar. 18,

---

pain or other symptoms; (6) any measures other than treatment an individual uses or has
used to relieve pain or other symptoms; and (7) any other factors concerning an
individual's functional limitations and restrictions due to pain or other symptoms.

2022) (citing *Abbruzzese v. Astrue*, No. CIV.A. 10-705, 2010 WL 5140615, at *7 (W.D.

Pa. Dec. 9, 2010) (acknowledging that physicians find migraines "when symptoms are

typical and results of physical examination (which includes a neurologic examination) are

normal" and that "[n]o procedure can confirm" the headaches)).

The ALJ also cites to a record in his decision indicating that Plaintiff's migraines

were controlled with Propanolol and Maxalt.[3] (Tr. 22.) However, the record as a whole

reflects that improvement was minimal. Moreover, other records, as detailed below, are

consistent with Plaintiff's reports of the disabling level and frequencies of her migraines:

- May 31, 2018 notes by provider Mark W. Bogel, MD: "She has chronic pain issues, more specifically chronic daily headaches. She has been tried on multiple medications, has followed with neurology and really has not found any long lasting relief. She would like to try medical cannabis.[4] Going by her history, she would be a candidate. She rates her pain level 10/10 on the PEG scale when her headaches are at their worst, at which time they are incapacitating and she is unable to continue with activities of daily living." (Tr. 513);

- August 18, 2018 notes by Plaintiff's primary care provider Kristie A. Johnson: "Migraine with aura and without status migrainosus, not intractable . . . Continue Inderal, 20 mg, 2 tabs, PO, bid; Continue Tylenol Extra Strength Table, 500 mg, 2 Tab(s) every 6 hours PRN for pain orally." (Tr. 509);

---

[3]     In his decision, the ALJ cites to a single March 29, 2018 report on a follow-up visit for migraine headaches. (Tr. 22.) While reports note that Plaintiff started Propanolol "two weeks ago" and they were under control at the time, the report also notes that a "[t]welve-point review of symptoms is significant for headache, vision problems, lightheadedness and numbness." (Tr. 426–27.)

[4]     At the hearing, Plaintiff testified that she was prescribed medical marijuana but could not afford it. (Tr. 51.) Plaintiff's testimony at the hearing is consistent with medical treatment notes from her primary care provider Johnson and Dr. Mark W. Bogel: "Patient had already been approved fof (sic) medical cannabis but cannot afford the medication." (Tr. 661); (*see also* Tr. 670 ("She has had some relief with medical cannabis, though the cost is somewhat prohibitive.").)

- October 7, 2018 notes by provider Syed Shahkhan, MD: "Mary states that her migraines did get some help from propranolol, but she is still getting her migraines at a frequency of about three to four per week. The patient states that prior to starting propranolol she would get migraines every day. She states that she takes rizatriptan for abortive therapy, but sometimes it does not help . . . Headaches better in terms of frequency but still continues at 3–4/week." (Tr. 984);

- April 9, 2019 notes by provider Amee Chandrabalan, DO: "She did have botox injections one time in December and did not feel the botox made a difference. She felt the infusions were helpful. She has daily migraines." (Tr. 980);

- May 21, 2019 notes by provider Amee Chandrabalan, DO: "Mary presents to discuss Ajovy and how to administer the injections. She has daily headaches. She has received 2 sets of Dysport injections without any changes in her headaches. She plans to have a third set of these injections in addition to starting Ajovy." (Tr. 977.) "Mary was seen in the ER recently for a migraine. She was given fluids, benadryl, tramadol, and an anti-nausea medication. These medications decreased the intensity of her migraine, but did not completely resolve it. In the past, medrol dose packs have not been effective. She cannot take NSAIDs due to past bariatric surgery." (Tr. 977);

- July 9, 2019 notes by provider Amee Chandrabalan, DO: "Past preventative treatments tried and failed: Propanolol, prochlorperazine, Topamax, Dysport, Ajovy Abortive; Rizatriptan, Sumatriptan." (Tr. 986);

- August 22, 2019 notes by provider Johnson: "patient with ongoing migraines sicne (sic) 2010. She has seen neuro for this and has not improved on medications, massage nor the botox injections she is currently doing. She is having daily symptoms, some worse than others. Triggers include lights, noise, stress. She is legally blind in her left eye with a prosthesis and she is not sure if that is playing a role." (Tr. 664);

- September 1, 2019 notes by an emergency room provider at St. John's Hospital Emergency Department: "She states that this headache is similar in onset (they always start suddenly), location and quality as her typical migraines. She took her abortive triptan, however vomited twice shortly thereafter, so it did not help." (Tr. 929);

- November 6, 2019 notes by provider Dr. Peter Boardman: "The headache is involving her whole head. She gets nauseous with the headache and she is sensitive to light and noise. Stress seems to trigger the headaches. She can get

11

some dizziness and lightheadedness. Her vision goes blurry and she gets sweats. When I asked how often she is having the headaches she says that she has facial pain and numbness down to the jaw bilaterally. She has tried fremanezab without benefit. Times go [sic] to St. John's for a migraine infusion. She has tried Topamax without benefit. Maxalt made her sleepy. She does not know if she is [sic] tried Depakote . . . Tried Botox without benefit." (Tr. 992.) "In terms of further medication trials we can try rizalriplan again since it did help with headaches." (Tr. 993.)

The medical records show reports regarding the disabling level and frequency of Plaintiff's migraines that are consistent with Plaintiff's subjective complaints. Significantly, none of the medical providers treating Plaintiff's migraines questioned the veracity of Plaintiff's reports. In fact, Johnson noted that Plaintiff was not a malingerer. (Tr. 975.) And while Plaintiff reported improvement at times, these improvements do not undermine Plaintiff's reports regarding the number of her migraines (3–4 headaches a week). (*See* Tr. 984 ("Mary states that her migraines did get some help from propranolol, but she is still getting her migraines at a frequency of about three to four per week. The patient states that prior to starting propranolol she would get migraines every day.").)

Further, though the ALJ found that Plaintiff's daily activities[5] "at one time or the other" were consistent with her ability to work (Tr. 28), Plaintiff's medical record is consistent with her testimony that her migraine symptoms interfered with her ability to work part-time. Plaintiff noted in a "Migraine Disability Assessment Test" that in the last

---

[5]     The ALJ cites the following for Plaintiff's daily activities: "driving, raising and taking care of a minor child, attending to her own care, preparing meals, performing some household chores, shopping in stores and by computer, managing her finances and medications, and engaging in hobbies such as reading, watching television, writing and singing." (Tr. 28 (citing Hearing Record Exhibits 4E, 11E and 22F/2).) The Court notes that Exhibits 4E and 11E are the same document (a SSA Function Report form). (*See* Tr. 329–36; 364–71.)

three months she was unable to do household work 15 days; there were 15 days when her productivity in household work reduced by half or more because of her headaches; and there were 15 days when she missed social or leisure activities because of her headaches. (Tr. 996.) The record also reflects that Plaintiff had to cancel appointments because of her migraine headaches. (Tr. 651.)

Plaintiff testified that, when she experiences a migraine, her "face goes numb down to my nose, then it's like this really sharp pain where it's all over my head." (Tr. 49.) This is consistent with her medical records:

> She will have pain all over her head and will have numbness around her mouth. She rates the pain 9/10. It will always last more than 4 hours. She will get nausea she has vomited previously but not recently. She is sensitive to light and sound. It is worse with movement.

(Tr. 980.) Additionally, Dr. Bogel noted in a June 10, 2019 medical visit that "[t]he intensity of her headaches continues to get to 10/10 on the PEG scale when her headaches are at their worse, at which time they are incapacitating and she is unable to continue with activities of daily living." (Tr. 670.)

As a general matter, determinations regarding a claimant's subjective complaints "are the province of the ALJ," and the Court will defer to the ALJ's decision "as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility."[6]

---

[6]     The SSA has eliminated the use of the term "credibility" from its sub-regulatory policy, clarifying that "subjective symptom evaluation is not an examination of an individual's character." *See* Social Security Ruling 16-3p, 2017 WL 5180304 at *2, 8 (Oct. 25, 2017). Instead, ALJs examine the consistency between subjective assertions and the record as a whole by considering all of the evidence in an individual's record. (*Id.*) Although the usage of terminology changed, the substantive analysis remains the same.

*Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). Here, however, the ALJ did not provide good reasons. Based on the above, because the Court finds that the ALJ's analysis is flawed, remand is required to reevaluate Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms related to her migraine headaches.[7]

### 2. Provider Kristie Johnson's medical opinions on absenteeism

Plaintiff also claims that the ALJ did not provide "good reasons" for rejecting Plaintiff's primary care provider—Kristie Johnson's, PA-C—opinions about Plaintiff's absenteeism. (Pl.'s Mem. 17–18.) For claims like Plaintiff's that were filed on or after March 27, 2017, the weight assigned to medical opinions is governed by 20 C.F.R. § 404.1520c. *Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020). Under § 404.1520c, the ALJ does not defer to any medical opinions, including opinions from the claimant's treating medical sources. 20 C.F.R. § 404.1520c(a). The ALJ instead considers all medical opinions according to five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how those two factors were considered in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ is not

_____

*Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020) ("It largely changes terminology rather than the substantive analysis to be applied.")

[7]     On remand, the ALJ must reconsider each of the factors set forth in SSR 16-3p.

required to explain the remaining factors unless the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 404.1520c(b)(2)-(3).

The new regulations no longer specifically state that an ALJ must give "good reasons" for the weight given to medical opinions. *Compare* 20 C.F.R. § 404.1527 (old rule) *to* 20 C.F.R. § 404.1520c; *see also Thomas v. Kijakazi*, No. 4:20 CV 363 DDN, 2021 WL 3566621, at *6 (E.D. Mo. Aug. 12, 2021) ("The new regulation . . . relaxed the requirement that ALJs provide 'good reasons' for the weight given to medical opinions."). Nonetheless, an ALJ's explanation for the weight given to a medical opinion must still be "adequately articulated" and "supported by substantial evidence." *Thomas*, 2021 WL 3566621, at *7–8; *Dornbach v. Saul*, No. 4:20-CV-36 RLW, 2021 WL 1123573, at *11 (E.D. Mo. Mar. 24, 2021) (reversing and remanding the Commissioner's decision because the "ALJ did not adequately support his reasoning for rejecting the treating medical sources' opinions" under 20 C.F.R. § 404.1520c); *Smith v. Kijakazi*, No. 3:20-CV-00364 (PSH), 2022 WL 193063, at *3 (E.D. Ark. Jan. 20, 2022) ("ALJs are required to 'explain' their decisions as to the two most important factors—supportability and consistency."). Accordingly, the Court examines the ALJ's decision to determine whether he adequately supported his reasoning for rejecting the medical opinions of Johnson.

In the present case, the ALJ analyzed two sets of opinions from Johnson. The first set consisted of medical opinion forms completed by Johnson on January 2019, July

2019, and January 2020 wherein she opined that Plaintiff could work less than 10 hours per week due to bilateral knee pain, migraine headaches, and left eye blindness. (Tr. 634–37, 972–73, 975–76.) The second set consisted of a physical medical source statement ("MSS") completed by Johnson on April 27, 2018, wherein Johnson opined that Plaintiff suffered, among other things, from daily migraines such that she would need to be absent for about four days per month from work. (Tr. 975–76.) The ALJ's decision regarding these opinions offered the following explanation:

> I find unpersuasive PCP Johnson's summarily disabling medical opinion forms, intended for county benefits, which are vague and do not provide any function-by-function limitation(s). I find somewhat persuasive her April 2018 MSS to the extent that it supports a sedentary residual functional capacity; however, her opinion regarding absenteeism and ability to sit are not supported by the objective evidence of record.

(Tr. 28.)

The ALJ's reasons for giving Johnson's opinions less weight failed to adequately explain why Johnson's opinions were not supported or inconsistent.[8] Starting with the

---

[8]     The regulations define the factor of "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The regulations define the factor of "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The word "consistent" in the regulations "is the same as the plain language and common definition of 'consistent'" and "includes consideration of factors such as whether the evidence conflicts with other evidence from other medical sources and whether it contains an internal conflict with evidence from the same medical source." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854 (Jan. 18, 2017).

factor of supportability, the Court finds that the record demonstrates relevant medical

evidence and supporting subjective reports of migraines that impeded Plaintiff's ability to

work. For example, Johnson's 2018 MSS opinion[9] described Plaintiff's migraines as

severe enough to interfere with attention and concentration needed to perform even

simple work tasks and that Plaintiff would sometimes need to take unscheduled breaks

during an 8-hour working day "daily" for "30 min-migraines." (Tr. 975–76.) Johnson's

2018 MSS opinion further noted that Plaintiff's impairments were likely to produce

"good days" and "bad days," that Plaintiff would be absent from work about four days

per month,[10] and that Plaintiff suffered from "frequent severe migraines affected by

lights, noise, busyness." (Tr. 976.) Moreover, in the medical opinion forms filled out by

Johnson on January 2019, July 2019, and January 2020, Johnson noted that Plaintiff

should be restricted from bright lights, computer screens, loud noise, and that her stress

should be limited because of her migraines (Tr. 634, 636); that treatment was not

---

[9]     The Court notes that the ALJ found Johnson's April 2018 MSS "somewhat persuasive to the extent it supports a sedentary residual functional capacity"; however, there is no nexus between Johnson's opinions and a "sedentary" job. (Tr. 28.) In fact, Johnson's opinion recommended against a sedentary job. (Tr. 973 (stating "difficulty with both sedentary and movement-oriented jobs"); Tr. 637 (stating "difficulty with sedentary and movement job").)

[10]    Johnson's opinions as to Plaintiff's need for absences likely relate to migraine headaches and not Plaintiff's knee impairment because Johnson's opinion regarding knee pain simply noted the need for frequent position changes, not absences. (Tr. 976.) Thus, based on a reasonable interpretation of this record, Plaintiff's absences likely relate to migraine headaches and not a need to change position due to her knee impairment. (*See* Tr. 636 (advising restrictions to "walking less than 10 minutes, frequent position changes"); Tr. 976 (stating "knee-pain needs frequent-position changes").)

improving Plaintiff's migraine symptoms (Tr. 637); and that Plaintiff could work 1-10 hours per week, explaining that Plaintiff had "difficulty [with] sedentary & movement job. Very low migraine tolerance." (Tr. 637.) The ALJ's decision itself reflects Plaintiff's need for breaks and absences:

> [Plaintiff] has migraine headaches 3 to 6 times weekly with stabbing pain in her head with numbness down the nose, which are managed with medications, limited use of medical cannabis due to prohibitive cost, lying down in a dark and quiet room, and sleeping for 2 to 5 hours. Her migraines are exacerbated by stress, light, noise, pain, and computer screens.

(Tr. 21.)

As to consistency, the record regarding Plaintiff's migraine headaches appears entirely consistent with Johnson's opinions. For instance, records show that Johnson continually treated Plaintiff for her migraines and made a medical referral to specialists for ongoing treatment. (Tr. 663.) Plaintiff also reported to the emergency department for her migraines, once on April 15, 2019, where a provider noted that Plaintiff had a "long history of migraine headaches for which she follows with neurology" and that Plaintiff had "developed a typical migraine headache for her yesterday with normal associated symptoms of blurred vision, photophobia, nausea" (Tr. 922–23); and again on September 1, 2019 at 1:09 a.m. with "sudden onset, diffuse headache associated with nausea and 2 episodes of vomiting." (Tr. 928–29.) Thus, the Court finds that the ALJ's rejection of Johnson's medical opinion and limitations was not adequately explained as to the inconsistency factor.

Because the Court finds that the ALJ failed to adequately explain why Johnson's opinions were not supported and not consistent, remand is required to reweigh Johnson's 2018 MSS opinion and January 2019, July 2019, and January 2020 medical opinions.[11]

### 3. Plaintiff's absenteeism in her RFC

In connection with the remand to reweigh Plaintiff's subjective complaints and Johnson's opinions, the ALJ must also reevaluate whether any absenteeism limitation should be included in Plaintiff's RFC. *See Williams*, 2022 WL 823062, at *10; *see also Baker v. Apfel*, 159 F.3d 1140, 1146 (8th Cir. 1998) (finding that if excessive absenteeism is caused by a claimant's impairment, it should be included in the RFC and considered by the vocational expert); *Youness v. Berryhill*, No. 17-CV-4108 (DSD/BRT), 2018 WL 2716301, at *10 (D. Minn. May 18, 2018) (finding an RFC unreliable when it did not include limitations associated with more than usual off-task time or absenteeism).

In sum, the Court concludes that the ALJ must reconsider whether Plaintiff meets Listing 11.02 under paragraph B's criteria. If the ALJ concludes on remand that Listing 11.02 is not met, the ALJ must also reweigh the opinions of Johnson and reconsider the intensity, persistence, and limiting effects of Plaintiff's symptoms. In connection with the

---

[11]    If on remand the ALJ finds that Johnson's opinion on absenteeism may be related to her left eye blindness or knee, and not her migraines, then the record must be further developed to isolate recommended limitations for Plaintiff's severe impairment of migraine headaches. *See*, *e.g.*, *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985) (noting that it is the ALJ's duty to develop the record fully and fairly where ALJ failed to order consultative neurological evaluation of claimant's headaches); *see also McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (recognizing that an ALJ has "a duty to develop the record").

remand to reweigh Johnson's opinions and Plaintiff's subjective complaints, the ALJ

must also reevaluate whether absenteeism should be included in Plaintiff's RFC.

### D. Appointments Clause

In addition to arguing the ALJ's analysis is flawed, Plaintiff also argues this case

should be remanded because 42 U.S.C. § 902(a)(3) violates the separation of powers and

thus the SSA's structure is unconstitutional. (*See* Pl.'s Mem. 29–30 (citing *Seila Law*

*LLC v. CFPB*, 140 S. Ct. 2183 (2020)).) But because the Court is already remanding the

matter, the Court need not take any position on the merits of Plaintiff's constitutional

challenge.[12]

### ORDER

Based on the foregoing, and on the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 20) is **GRANTED IN**

**PART** and **DENIED IN PART**;

---

[12]      Along with her challenge of 42 U.S.C. § 902(a)(3), Plaintiff raises an argument
regarding the ratification of the ALJ. (*See* Doc. No. 25 at 17–19 (citing *Brian T. D. v.
Kijakazi*, No. 19-CV-2542 (DTS), 2022 WL 179540, at *2 (D. Minn. Jan. 20, 2022).) The
Court declines to address this belated argument. *See Dereschuk v. Berryhill*, 691 F.
App'x 292, 294 n.3 (8th Cir. 2017) ("Absent some reason for failing to raise an issue in
the opening brief, 'we will not consider an issue first raised in a reply brief.'") (quoting
*United States v. Darden*, 70 F.3d 1507, 1549 n.18 (8th Cir. 1995), cert. denied, 517 U.S.
1149 (1996))); *see also Loeffler v. Massanari*, 23 F. App'x 605, 606 (8th Cir. 2001)
(citing *PlaNet Prods., Inc. v. Shank*, 119 F.3d 729, 732 (8th Cir. 1997) (declining to
consider argument raised for first time in reply brief)). Even if this argument was timely
raised, because the Court is already remanding the matter, it need not address the merits
of Plaintiff's argument.

2.      Defendant's Motion for Summary Judgment (Doc. No. 22) is **DENIED**; and

3.      This matter is remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four), consistent with this Memorandum Order and Opinion. On remand, the ALJ must:

a.      reconsider at step two whether Plaintiff's migraines meet paragraph B's criteria under Listing 11.02 under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.02;

b.      reweigh Johnson's 2018 MSS opinion and January 2019, July 2019, and January 2020 medical opinions consistent with 20 C.F.R. § 404.1520c;

c.      reevaluate Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of Plaintiff's migraine symptoms and reconsider each of the factors set forth in SR 16-3p; and

d.      address RFC limitations relating to Plaintiff's migraines, including absenteeism.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 14, 2022                    *s/ Becky R. Thorson*
                                        BECKY R. THORSON
                                        United States Magistrate Judge